UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBBIE A. GRAYBILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21CV332 HEA |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of Plaintiff Debbie A. Graybill for disability insurance benefits and supplemental social security income under Titles II and XVI of the Social Security Act (SSA), 42 U.S.C. §§ 401-434, 1381-1385. The Court has reviewed the filings and the administrative record as a whole, which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

**Background**

Plaintiff applied for disability insurance benefits and supplemental social

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

security income on December 3, 2018. A hearing was held on January 30, 2020, in front of an Administration Law Judge (ALJ). In an opinion issued on March 13, 2020, the ALJ determined that Plaintiff was not under a disability at any time from her alleged onset date of November 29, 2018. The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. In her decision, the ALJ found Plaintiff had the severe impairments of lymphedema, obesity, asthma, and vestibular migraines. The ALJ noted Plaintiff had the following non-severe impairments: obstructive sleep apnea, diabetes mellitus, hearing loss, tinnitus, hypertension, fatty liver disease, and gastroesophageal reflux disease (GERD). However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except occasionally climb ramps and stairs, as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations:

> …[Plaintiff] cannot climb ladders, ropes, or scaffolds; occasionally balance (as defined by the DOT[2]), stoop, kneel, crouch, and crawl; cannot have exposure to unprotected heights or hazardous machinery; can only have occasional exposure to extreme temperatures and pulmonary irritants; would require the ability to elevate her legs below waist level, specifically up to 30 degrees, while seated; and would require the ability to alternate

---

[2] Dictionary of Occupational Titles

sitting and standing with standing for 5 minutes for every hour seated while remaining on task.

Based on vocational expert testimony, the ALJ found Plaintiff could not perform her past relevant work as a paralegal, but could perform the work of a legal secretary.

Plaintiff filed a timely Request for Review of Hearing Decision, and the Appeals Council denied the request for review. Plaintiff has exhausted all administrative remedies. The decision of the ALJ stands as the final decision of the Commissioner.

## Hearing Testimony

Plaintiff, who was fifty-four years old at the time of the hearing, was represented by counsel at her hearing before the ALJ. Plaintiff testified that she lives with her son in a mobile home. Her son is twenty-five years old and has Asperger's but does not require physical care. Plaintiff testified she has Medicaid for health insurance. Plaintiff has a bachelor's degree in Criminal Justice with an emphasis on management. Plaintiff testified that the last time she worked was on November 16, 2018. She had been a paralegal working for a law firm for almost fifteen years. As a paralegal, she was responsible for filing legal books and files, which could require lifting approximately forty to fifty pounds.

Plaintiff testified that she had problems with lymphedema in her legs for the past ten years, which became a major problem at work three to four years ago.  She had a lot of doctor's appointments, and within the last year of working, needed to

3

go to appointments at least four to five days a week. She also has episodes of cellulitis, mainly in the time after she stopped working. Plaintiff testified she had four cellulitis episodes in the last year that takes about two doses of a ten-day antibiotic to get under control. She cannot afford a lymphedema pump because insurance will not cover it, but she had been wearing leg wraps for the past year and recently obtained new ones that can be taken on and off more frequently. The new wraps are in two pieces that cover her ankle to her thighs and are a Styrofoam-like material that attach with Velcro. While wearing the wraps, she can stand and can bend her knees and drive, but it is difficult. Plaintiff testified her legs are scaly and swollen and her left leg has purple and red marks. She pulled her left pants leg up at the hearing to show her leg, which was consistent with her testimony. Plaintiff testified by the end of the day, her ankle would probably be twice the size as it was at the hearing and that is a typical day.

    Around December 2018, Plaintiff started having issues with what she thought was vertigo but was diagnosed with vestibular migraines. She usually experiences dizziness, and she loses her balance when moving too quickly. Her head feels congested, and she has a ringing in her left ear. She gets nauseous and vomits until she takes Zofran when it gets really severe, otherwise it will not go away, and she will end up in the hospital with dehydration. She has experienced these severe spells two to three times in the past year. Plaintiff testified she also suffers from sleep apnea and insomnia, which can cause her to fall asleep while she

is in the middle of something. She has fallen asleep at work and while driving, which is why she doesn't drive much. Additionally, Plaintiff has asthma and diabetes. She takes Advair for her asthma and is trying to get a nebulizer that makes it easier to breathe. Her shortness of breath is easily triggered, especially when she is around someone who smokes. Her diabetes was not under control at the time of the hearing, and she was taking four units of insulin (Novolog) for every 15 carbohydrates she eats. She testified she weighs between 296 and 310 pounds and has tried to lose weight.

 Plaintiff testified she had been seeing Dr. Angel, a primary care doctor for three years, but now sees Dr. Jonah Graves. She regularly goes to physical therapy appointments and also sees an endocrinologist and a pulmonary doctor. She typically has three to four appointments per week.

 As for her activities of daily living, Plaintiff testified she is able to be on her feet between twenty and forty minutes, then rolls around her home on office chair. She cannot get up and move around much. She only does grocery shopping if the store has electric carts, otherwise, she has someone else do it. She has tried to walk through the store before, but about halfway through, needs to sit down. She does the dishes and laundry because she can sit at the same time, but her son does things that require standing, like vacuuming and mopping. When her swelling gets worse, she has a medical chair that she can lay back on to elevate her legs. She sits most of the day with her legs elevated based on her doctor's instructions. Other than

5

doctor's appointments, she doesn't do outside activities, like church or social things.

A Vocational Expert (VE) testified, and the ALJ posed the following hypothetical: an individual with the Plaintiff's same age, education, and work history, who is able to perform work only at a sedentary exertional level, who is limited to occasional ramps and stairs; no ladders, ropes or scaffolds; occasional balance as defined by the DOT; occasional stoop, kneel, crouch and crawl; never work at unprotected heights; no hazardous machinery; and can only have occasional exposure to extreme temperatures and pulmonary irritants while working. The VE testified that person could not perform Plaintiff's past work, but could perform the job of a legal secretary. The VE testified the skills of a paralegal transfer into a legal secretary position for skills such as researching and analyzing, documenting, writing letter and other documents, and assisting attorneys in any type of filing paperwork required for the type of law they practice.

A second hypothetical posed, assuming the same facts as the first, added that the individual, when seated, would need to elevate his/her legs thirty degrees below waist level. The VE testified that person could perform the job of a legal secretary, and it was not uncommon for people to keep a footstool underneath their desk. The VE added that it becomes impossible to perform at a sedentary level when the elevation of the legs gets at, or is above, the waist level.

A third hypothetical posed, assuming the same facts as the first two, added that the individual needs to alternate sitting and standing for five minutes for every hour seated while remaining on task. The VE testified that person could also perform the job of a legal secretary. The ALJ's last hypothetical asked if the VE's opinion changed if the individual needs to alternate sitting and standing for ten minutes, instead of five minutes, for every hour seated while remaining on task. The VE testified that would change her opinion, as that would require a special accommodation, such as a sit/stand workstation, so the individual would still be able to work while standing for the ten minutes each hour.

## Legal Standard

To be eligible for benefits under the Social Security Act, Plaintiff must prove that [s]he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four. At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at the fourth step of process).

The claimant bears the burden through Step Four of the analysis. If [s]he meets this burden and shows that [s]he is unable to perform [her] past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with [her]

8

impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

**Residual Functional Capacity (RFC)**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959,

9

969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

## Decision of the ALJ

At Step One of the decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 29, 2018, the alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe impairments of lymphedema, obesity, asthma, and vestibular migraines. The ALJ noted Plaintiff's non-severe impairments as well (obstructive sleep apnea, diabetes mellitus, hearing loss, tinnitus, hypertension, fatty liver disease, and GERD). However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, so the ALJ's analysis proceeded to Step Four. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the RFC to perform sedentary work, except occasionally climb ramps and stairs, as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: Plaintiff cannot climb ladders, ropes, or scaffolds. She can occasionally balance (as defined by the DOT), stoop, kneel, crouch, and crawl. She cannot have exposure to unprotected heights or hazardous machinery. She can only have occasional exposure to extreme temperatures and pulmonary irritants. She would require the ability to: elevate her legs below waist

10

level, specifically up to thirty degrees, while seated; and alternate sitting and standing for five minutes for every hour seated while remaining on task.

At Step Four, the ALJ found Plaintiff is unable to perform her past relevant work as a paralegal.

At Step Five, the ALJ found Plaintiff could perform work based on VE testimony. Considering Plaintiff's age, education, work experience, and the RFC, the ALJ found Plaintiff claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy, such as a legal secretary. Therefore, the ALJ found Plaintiff not disabled.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issues here are (1) whether the ALJ considered that Plaintiff's impairments met or medically equaled Listing 4.11; (2) whether the RFC that requires Plaintiff to elevate her legs below waist level is supported by substantial evidence; and (3) whether the Appeals Council failed to review additional evidence.

## Discussion

The ALJ carefully detailed her findings through her discussion of Plaintiff's impairments. As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson*, 402 U.S. at 401; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).

**Whether the ALJ considered that Plaintiff's impairments met or medically equaled Listing 4.11**

"The burden of proof is on Plaintiff to establish that his or her impairment meets or equals a listing. To meet a listing, an impairment must meet all of the listing's specified criteria." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citation omitted). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id.* at 531 (citation omitted).

12

Plaintiff argues that the ALJ failed to consider whether her impairments met or equaled Listing 4.11. In order to meet listing 4.11, Chronic Venous Insufficiency, Plaintiff would have to prove:

> Chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:
>
> A. Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip; or
>
> B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.11

The ALJ explained that the record does not document the brawny edema or ulceration required by 4.11. The ALJ acknowledged that pitting edema is documented, but this is not the same as the brawny edema that is required by the listing in 4.11(A). "Brawny edema is swelling that is usually dense and feels firm due to the presence of increased connective tissue...It is not the same as pitting edema. Brawny edema generally does not pit (indent on pressure), and the terms are not interchangeable. Pitting edema does not satisfy the requirements of 4.11A." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.00.G.3.

4.11(B) requires recurrent or persistent ulceration. The ALJ explained that the record does not document ulceration as required. The ALJ recognized that Plaintiff had some instances of open lesions and tearing, but this was not a

13

common occurrence. In addition, medication and treatment for Plaintiff did appear to help, and diagnostic findings uncovered no sign of deep vein thrombosis. No ulcers were noted during examinations.

Plaintiff also argues the ALJ only evaluated her lymphedema and not her cellulitis when addressing Listing 4.11. However, the ALJ acknowledged that along with the edema, there were also some indications of erythematous patches on skin that were tender at times as well as cellulitis, but there was no objective evidence that this was "a substantial hindrance in its own right." Plaintiff fails to prove otherwise and presented no evidence that her cellulitis was recurrent or persistent and had not healed following at least 3 months of prescribed treatment as required by 4.11(B). In fact, at the hearing, Plaintiff testified she had four cellulitis episodes in the last year that takes about two doses of a ten-day antibiotic to get under control. *See Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) (conditions amenable to treatment do not support a finding of disability).

The substantial evidence in the record as a whole supports the ALJ's determination that Plaintiff's impairments did not meet or medically equal Listing 4.11. In explaining her findings, the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (citing *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

14

**Whether the RFC that requires Plaintiff to elevate her legs below waist level is supported by substantial evidence**

Plaintiff next argues that the RFC limitation that requires Plaintiff to elevate her legs below waist level up to thirty degrees is not supported by substantial evidence because the ALJ dismissed the medical opinions. Plaintiff doesn't disagree with the RFC's limitation to elevate her legs, but she disagrees with how high that elevation should be. Plaintiff seems to argue the ALJ's limit to a thirty-degree elevation below waist level is not enough.

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted). "'Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.' However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* at 932 (citation omitted). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007) (citation omitted).

15

The subject regarding Plaintiff's need to elevate her legs came up several times throughout the record, but as the ALJ explained, there wasn't any evidence that this elevation needed to be above waist level. At the hearing, Plaintiff testified when her leg swelling is aggravated, she has a medical chair that she can lay back on to elevate her legs. She testified she sits most of the day with her legs elevated based on her doctor's instructions. At a physical therapy appointment, Plaintiff reported elevating her legs to relieve her symptoms, and she was instructed to elevate her legs "as much as possible" when taking Lasix for cellulite treatments. Plaintiff never mentioned that the elevation needed to be above waist level in her testimony, nor did the record support this limitation.

As to the ALJ's finding regarding Dr. Graves, the ALJ reasonably found his opinion not to be persuasive. After just two appointments and treating Plaintiff for barely two months, Plaintiff talked to Dr. Graves about her disability application, and he agreed with her prior provider that she could not work due to the need for leg elevation, chronic vertigo, and need for frequent health care. As the ALJ noted, Dr. Graves provided no support for his opinion and the opinion itself did not address how long Plaintiff could engage in any activities. Dr. Graves stated that he formed his opinion after seeing Plaintiff in the clinic but cited no objective findings to support his opinion. After a visit on July 8, 2019, he assessed Plaintiff with chronic bilateral lower extremity edema, stating that it was "likely related to obesity" and recommended wrapping the legs, but he also did not mention

16

elevating the legs. Again, there is no indication that she needed to elevate above waist level.

The ALJ justified the RFC determination by explaining her findings demonstrate that Plaintiff remains functionally intact for the most part, was able to ambulate, had intact strength and had generally conservative treatment, but that does not mean no limitation is warranted. The ALJ recognized that Plaintiff's consistent edema, the sedentary level along with the need for a sit-stand option, elevation of the legs, postural limitations consistent with those above, and a need to avoid temperature extremes are supported, but the collective findings support no greater limitation than as stated in the RFC.

She examined the entire record, and her opinion that there is "no sign that [Plaintiff] would need to raise her legs above waist level" during the workday is substantially supported by the evidence before her.

**Whether the Appeals Council failed to review additional evidence**

While Plaintiff's Request for Review was pending at the Appeals Council, she submitted a new medical source statement from Dr. Graves. The letter, dated March 27, 2020, stated Plaintiff's legs should be elevated above the level of the heart on a scheduled basis, like three to four times per day. The Appeals Council determined that the letter, dated seven days after the relevant period, would not affect the determination of whether Plaintiff was disabled on or before March 13, 2020.

17

The Appeals Council will review an ALJ's decision if it receives additional evidence, which is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5) and 416.1470(a)(5). Here, the Appeals Council denied Plaintiff's request for review. The Court does not review the Appeals Council's denial, but rather determines "whether the record as a whole, including the new evidence, supports the ALJ's determination." *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) (citing *Cunningham v. Apfel,* 222 F.3d 496, 500 (8th Cir. 2000)). As discussed above, the ALJ expressly considered whether Plaintiff needed to elevate her legs above waist level and found that evidence did not support that limitation. Dr. Graves's subsequent letter would not have changed the ALJ's determination that Plaintiff was not disabled.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 19th day of September, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE